**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **REYNALDO MARTINEZ** ) | |
| **1545 Vivian Lane** ) | |
| **Incline Village, NV 89451** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. _____** |
| ) | |
| **COMPRESSUS INC.** ) | |
| **101 Constitution Avenue, N.W.** ) | |
| **Suite 800** ) | |
| **Washington, D.C. 20001-2133** ) | |
| **Serve: YCS&T Services LLC** ) | |
| **Resident Agent** ) | |
| **1000 N. King Street** ) | |
| **Wilmington, DE 19801** ) | |
| ) | |
| **and** ) | |
| ) | |
| **THOMAS D. CAMPBELL** ) | |
| **101 Constitution Avenue, N.W.** ) | |
| **Suite 800** ) | |
| **Washington, D.C. 20001-2133** ) | |
| ) | |
| **and** ) | |
| ) | |
| **JOHN B. MACFARLANE** ) | |
| **101 Constitution Avenue, N.W.** ) | |
| **Suite 800** ) | |
| **Washington, D.C. 20001-2133** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## COMPLAINT

COMES NOW, Plaintiff Reynaldo Martinez ("Mr. Martinez"), by undersigned counsel,

hereby brings suit against Defendants Compressus, Inc. ("Compressus" or the "Company"),

Thomas D. Campbell ("Campbell"), and John B. Macfarlane ("Macfarlane"), and for his

Complaint, alleges and states as follows:

**STATEMENT OF THE CASE**

1.      This is an action to recover unpaid wages, unpaid reimbursable work related expenses, medical and dental expenses, premium payments, other unpaid monetary compensation owed by Defendants to Mr. Martinez, liquidated damages, and penalties.

2.      Mr. Martinez is a Co-Founder of Compressus.  From 2001 until his unexpected termination in June 2013, he worked tirelessly on behalf of the Company to establish and maintain close ties with legislative contacts in the United States Congress and to assist in raising essential start-up capital.

3.      In exchange for his services, Defendants promised to pay Mr. Martinez a salary of Ten Thousand and 00/100 Dollars ($10,000.00) per month, plus benefits and reimbursement of expenses.  Notwithstanding the foregoing, Defendants never regularly paid Mr. Martinez his salary but instead made intermittent payments.  Thus, for many pay periods, Mr. Martinez went without pay, relying on Defendants' promises that he would eventually be paid in full.  However, Mr. Martinez has never received payment in full for his outstanding wages and reimbursable work related expenses.

4.      In or around March 2011, Mr. Campbell asked Mr. Martinez to resign from Compressus' Board of Directors due to a diagnosis of early mild cognitive impairment.  The causative factor turned out to be severe sleep deprivation due to sleep apnea and severe stress. Mr. Martinez complied with Mr. Campbell's request submitting a letter of his resignation from the Board of Directors on or about April 6, 2011.  However, Mr. Martinez did not resign his employment as the Company's Chief of Government Relations.  Rather, Mr. Martinez continued to work for the Company as an employee until his unexpected termination in June 2013.

5.      In mid-June 2013, after having spent significant time on a new project for the Company, Mr. Martinez discovered for the first time that Compressus had cancelled his benefits effective April 30, 2013, when his wife discovered that recent dental and medical bills for Mr. Martinez and his family had been denied coverage.  Mr. Martinez immediately contacted Mr. Macfarlane, who informed him that Mr. Martinez had resigned his employment in April 2011. Mr. Macfarlane took the position that Mr. Martinez's salary had been terminated at that time, and that the Company had continued to provide him benefits while making up salary arrearages.  Mr. Macfarlane's contentions defy credulity, however, as they directly contradict Compressus' actual conduct during the years 2011, 2012, and 2013.  Specifically, during this time, Compressus continued Mr. Martinez's benefits without sending him the notices required by federal law to be sent upon termination of an employee's benefits, provided him intermittent wage and salary payments, and provided him W-2 statements.

6.      Consequently, Mr. Martinez brings this action to redress numerous violations of federal and District of Columbia wage payment laws and federal laws governing employee benefit plans, as well as common law violations occurring during Mr. Martinez's employment under Defendants.  In particular, Mr. Martinez brings this action pursuant to District of Columbia common law regarding breach of contract and quantum meruit; the Fair Labor Standards Act of 1938, *as amended*, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq.* ("DCMWA"); the D.C. Wage Payment and Collection Law, *as amended*, D.C. Code §§ 32-1301 *et seq.* ("DCWPCL"); the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"); and the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §§ 1161 *et seq.* ("COBRA").  Mr. Martinez seeks back pay in the form of promised wages for labor and services

3

rendered on Defendants' behalf; reimbursement of expenses he incurred in performing his duties on behalf of Compressus; equitable relief in the form of requiring Compressus to recognize Mr. Martinez as a Co-Founder and Director Emeritus in any and all listings of the Board of Directors of the Company; equitable estoppel of the Company's cancellation of his benefits; a surcharge against the Company in an amount equal to the dental and medical expenses and premium payments he was forced to incur; liquidated damages; punitive damages; attorneys' fees, costs, and expenses; and any other legal or equitable relief this Court deems just and proper.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because this action is one between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Jurisdiction is also proper in this Court under 28 U.S.C. § 1331, because this action arises under the laws of the United States.

9.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c), because a substantial part of Defendants' wrongful conduct and the events giving rise to the claims alleged herein occurred within the District of Columbia.

## PARTIES

10.      Plaintiff Reynaldo Martinez is an individual residing in Incline Village, Nevada and is a Co-Founder of Compressus.  He served on the Board of Directors of Compressus from 2001 until April 2011, when he was asked to resign by the Chairman of the Board due to a medical diagnosis, and was an employee of the Company and served as its Chief of Government Relations from 2001 until June 2013.

11.     Defendant Compressus Inc. is a Delaware corporation with its principal place of business in Washington, D.C., engaged in the business of providing computer software products and information technology services and specializing in healthcare information management.

12.     On information and belief, Defendant Thomas D. Campbell is an individual residing in the United States Virgin Islands.  He is a Co-Founder of Compressus and at all times relevant to this Complaint acted as the Chairman of the Company's Board of Directors.

13.     On information and belief, Defendant John B. Macfarlane is an individual residing in the United States Virgin Islands.  At all times relevant to this Complaint, he acted as Chief Executive Officer of Compressus.

## FACTS

## I.     Founding of Compressus, Mr. Martinez's employment as Chief of Government Relations, and Compressus' failure to regularly pay Mr. Martinez's salary.

14.     In 2000, Mr. Martinez, Mr. Campbell, and another partner founded Compressus after Mr. Martinez introduced to his future partners a unique compression technology developed by a company based in Las Vegas, Nevada.  This led to the founding of the Company and the eventual acquisition of the technology by Compressus.

15.     Beginning in or around 2001, Mr. Martinez began working for Compressus as its Chief of Government Relations.  In this capacity, Mr. Martinez, among other things, successfully established and maintained ties and access with legislative contacts in the United States Congress, including by traveling frequently to Washington, D.C. from his home in Nevada after having moved to Nevada in 2005.  Mr. Martinez was also essential in raising capital for Compressus.

16.     Since the start of his employment, Mr. Martinez was to be paid a gross salary of Ten Thousand Dollars and 00/100 ($10,000.00) per month, plus benefits and reimbursement of expenses.

17.     Further, on or about December 16, 2008, Mr. Martinez and Compressus entered into an Employment Agreement (the "Employment Agreement").  A true and correct copy of the Employment Agreement is attached hereto as Exhibit A and incorporated by reference as if fully stated herein.  The Employment Agreement specifically provides that Compressus shall pay Mr. Martinez, in twice per month installments, an annual base salary of One Hundred Twenty Thousand and 00/100 Dollars ($120,000.00).  *See* Ex. A, § 3.1.

18.     The Employment Agreement also provides that Mr. Martinez shall be entitled to participate in all applicable bonus and benefit programs that Compressus establishes and makes available to its employees, including without limitation the Company's medical, dental, retirement, long-term disability, life insurance and savings plans, and that Compressus shall reimburse Mr. Martinez for all reasonable travel, entertainment and other expenses incurred or paid by Mr. Martinez in connection with, or related to, the performance of his duties, responsibilities or services.  *See* Ex. A, §§ 3.2, 3.3, Sch. A.

19.     Additionally, the Employment Agreement provides that, upon termination of employment for cause or at the election of either party, Compressus shall pay to Mr. Martinez the compensation and benefits otherwise payable to him through the last day of his actual employment by the Company.  *See* Ex. A, § 5.1.

20.     Notwithstanding the foregoing, Compressus never paid Mr. Martinez his $10,000 per month gross salary on a regular basis.  Instead, the Company would at times send him lump sum payments, and at other times, Mr. Martinez went many pay periods without pay, relying

6

upon Defendants' representations that he eventually would be fully paid.  However, even given

the intermittent wage and salary payments Compressus did make, Mr. Martinez has never been

paid in full the amount of wages due – nor has he been reimbursed in full the amount of work

related expenses he has incurred – since the start of his employment with the Company.

## II.    Mr. Martinez resigns from Compressus' Board of Directors, but not as an employee of the Company.

21.    In addition to serving as Chief of Government Relations for the Company, Mr.

Martinez had served on Compressus' Board of Directors since the start of his employment.

22.    In or around March 2011, Mr. Martinez informed Mr. Campbell that he had been

diagnosed with a mild cognitive impairment that could be a precursor to Alzheimer's Disease.

23.    In response, and in violation of the Americans with Disabilities Act, Mr.

Campbell informed Mr. Martinez that it was his fiduciary duty to resign from the Board of

Directors to protect the Board and the Company from potential lawsuits that may arise due to his

condition.  Accordingly, on or about April 6, 2011, Mr. Martinez submitted a letter tendering his

resignation from Compressus' Board of Directors (the "Board Resignation Letter").  However,

nowhere in the Board Resignation Letter did Mr. Martinez resign from his employment at

Compressus as Chief of Government Relations.  In fact, Mr. Martinez never resigned from his

position at Compressus but instead continued his employment with the Company until he learned

of his unexpected termination in June 2013.

24.    Subsequent to his submission of the Board Resignation Letter in 2011, Mr.

Martinez traveled to the National Institute of Aging in Baltimore, Maryland, where he underwent

three days of in-depth neurological testing and diagnostics.  As a result of these tests and

diagnostics, it was conclusively determined that Mr. Martinez did not have the brain proteins

causing Alzheimer's Disease.  Instead, Mr. Martinez's condition was diagnosed as severe sleep deprivation due to sleep apnea and severe stress.

25.     Mr. Martinez shared the diagnostic results from the National Institute of Aging with his physician in Reno, Nevada, Dr. Thomas Bittker ("Bittker"), who is a forensic psychiatrist.  Dr. Bittker personally explained the diagnosis of sleep deprivation to Mr. Campbell and stated that Mr. Martinez's condition was not threatening to his ability to serve on the Board of Directors and that he should be reinstated.

26.     Mr. Campbell refused to reinstate Mr. Martinez as a member of Compressus' Board of Directors.  Instead, Mr. Campbell said that Mr. Martinez would thereafter be recognized as a Board Member Emeritus.  However, this was never done.

### III.     Compressus inexplicably and without notice cancels Mr. Martinez's benefits and ceases paying him any salary.

27.     Mr. Martinez continued to be a Compressus employee receiving intermittent pay checks and benefits in 2011, 2012 and 2013.  On or about January 15, 2013, Mr. Martinez received what turned out to be his final payment from Compressus, although Mr. Martinez did not know that at the time.

28.     As evidence of his continued employment at Compressus, in or around April 2013, Mr. Campbell requested Mr. Martinez to relocate from Nevada to Washington, D.C. to assist in winning a contract with the United States Department of Veterans Affairs.

29.     As expected of an employee following the request of his direct supervisor, Mr. Martinez complied, traveling at his own expense to Washington, D.C. and meeting with colleagues to begin the project.  In addition, and at the request of Mr. Campbell, Mr. Martinez researched and interviewed potential candidates for a paid assistant position to assist on the project, and recruited an individual to serve in this capacity.  At all times, Mr. Martinez

understood that he was still an employee with Compressus who would receive salary and be reimbursed for his expenses.

30.     In or around mid-June 2013, Mr. Martinez's wife, Diane Martinez ("Mrs. Martinez"), discovered that recent medical and dental bills of Mr. Martinez and his family that should have been covered by his Compressus benefits were inexplicably denied.  As a result, medical providers began to demand private reimbursement for overdue payments on these bills.

31.     In response to the denial of coverage, Mrs. Martinez contacted Aetna and was informed by a representative that Mr. Martinez's family health and dental insurance had been cancelled by Compressus effective April 30, 2013.

32.     Additionally, Compressus cancelled Mr. Martinez's coverage under the Company's long-term disability and life insurance plans, in which up until that time he had been eligible to participate.

33.     Incredibly, this cancellation of benefits was done without warning or notification to the Martinez family.

34.     Thereafter, Mr. Martinez immediately called Mr. Macfarlane, who took the position for the first time in 2013 that Mr. Martinez had resigned his employment with Compressus in April 2011.  Mr. Macfarlane also stated that Mr. Martinez's salary terminated at that time but that Compressus had continued Mr. Martinez's benefits while paying salary arrearages for the next two years.  None of this had ever been communicated to Mr. Martinez.

35.     Mr. Macfarlane's contentions that Mr. Martinez's employment terminated in April 2011, however, directly contradict the Company's actual conduct during the period of April 2011 to April 2013.  Specifically, during this time, Compressus continued Mr. Martinez's benefits without providing the notice of continuation coverage required by federal law to be

9

supplied upon a qualifying event, continued to make intermittent wage and salary payments to Mr. Martinez, and provided him a W-2 wage statements for that compensation in each of 2011, 2012, and 2013.

36.     Moreover, continuation of benefits cannot substitute for the legal requirement of an employer in the District of Columbia to pay an employee all amounts due promptly within a defined timeframe after discharge or resignation, or for Compressus' contractual obligation under the Employment Agreement to pay Mr. Martinez upon termination all compensation otherwise payable to him through the last day of his actual employment by the Company.

37.     As a result of Defendants' actions, Mr. Martinez has not been paid back wages owed to him by Compressus, including minimum or promised wages, for numerous pay periods, including most recently, and without limitation, the pay periods from mid-January 2013 to June 30, 2013.

38.     In addition, Mr. Martinez has not received reimbursement of work related expenses, even though Compressus expressly promised to make such remuneration.

39.     Mr. Martinez and his family have also been denied benefits coverage and incurred medical and dental expenses as a result of Compressus' wrongful termination of his benefits without notice, thereby severely damaging their credit rating.

40.     Since mid-June 2013, Mr. Martinez has tried to work out these matters with Compressus.  As part of the dialogue that occurred, Mr. Campbell admitted and agreed that Compressus owed Mr. Martinez Two Hundred Ninety Thousand and 00/100 Dollars ($290,000.00) in back wages.  Mr. Campbell also admitted and agreed that Compressus owed Mr. Martinez the unpaid medical and dental expenses he and his family incurred between May

10

2013 and August 2013, and that Compressus owed Mr. Martinez his unreimbursed work-related expenses.

41.     Further, Mr. Campbell agreed that Compressus would pay Mr. Martinez a 10% percent service fee or interest on top of Mr. Martinez's back wages and expenses.  Mr. Campbell also agreed that going forward and for a minimum of three years, Mr. Martinez would receive Twenty Thousand and 00/100 Dollars ($20,000.00) per month, reimbursement of expenses, plus a 5% performance fee for government contracts and a 10% performance fee for private placements.

42.     Notwithstanding the foregoing, and despite Mr. Campbell's expressions on numerous occasions asking "how can we make this right," Defendants failed to redress as promised the injuries caused to Mr. Martinez and his family.  Instead, Defendants' representations about working this dispute out turned out to be mere stalling tactics.

43.     The conduct of Defendants, as set forth above, was the result of a purposeful scheme to deny all wages and compensation owed to Mr. Martinez and to deny all benefits owed to Mr. Martinez and his family, and was willful, in bad faith, and directly and proximately caused significant monetary damages to Mr. Martinez.

<u>**COUNT I**</u>
**(Breach of Contract – Compressus)**

44.     Mr. Martinez re-alleges and incorporates by reference the foregoing allegations of the Complaint.

45.     Compressus entered into a binding contract with Mr. Martinez for employment that, at all times relevant to the Complaint, imposed obligations on the Company, including without limitation the payment of wages of $10,000 per month in exchange for Mr. Martinez's service in the Company's employ.

46. Compressus' contract with Mr. Martinez also included, at all times relevant to the Complaint, Mr. Martinez's entitlement to participate in all applicable bonus and benefit programs of Compressus – including without limitation the Company's medical, dental, retirement, long-term disability, life insurance and savings plans – and provided that the Company would reimburse Mr. Martinez for all work related expenses he incurred.

47. On or about December 16, 2008, Compressus and Mr. Martinez memorialized their contract in writing by executing the Employment Agreement. *See* Ex. A.

48. Mr. Martinez fully performed under the contract by faithfully and efficiently executing his work duties.

49. Compressus' failure to perform its duties with respect to the payment of wages and the reimbursement of work related expenses for numerous pay periods, including most recently and without limitation the pay periods from mid-January 2013 to June 30, 2013, constitutes a breach of contract by the Company.

50. Additionally, upon information and belief and at all times relevant to the Complaint, Mr. Martinez justifiably relied to his detriment on repeated promises made by the Company to pay him his back wages and unreimbursed expenses, and the Company intended Mr. Martinez to rely on its promises, even though it knew it would not pay him his back wages and unreimbursed expenses as he had come to expect.

51. As a result of Compressus' breach, Mr. Martinez suffered economic harm and is entitled to the payment of wages due in an amount not less than Two Hundred Ninety Thousand Dollars ($290,000.00), the reimbursement of outstanding work related expenses in an amount not less than Seventy Five Thousand Dollars ($75,000.00), prejudgment interest, other compensation that Mr. Martinez would have received but for Compressus' breach of contract, and

compensatory damages, as well as equitable relief in the form of requiring Compressus to recognize Mr. Martinez as a Co-Founder and Director Emeritus in any and all listings of the Board of Directors of the Company.

## COUNT II
### (Quantum Meruit – Compressus)

52.     Mr. Martinez re-alleges and incorporates by reference the foregoing allegations of the Complaint.

53.     Throughout his employment, Mr. Martinez rendered valuable services to Compressus as Chief of Government Relations by, among other things, establishing and maintaining ties with legislative contacts in the United States Congress and assisting in raising capital for the Company.

54.     Compressus accepted and enjoyed the services of Mr. Martinez under such circumstances that reasonably notified the Company that Mr. Martinez expected to be paid by the Company.

55.     Compressus admitted and confirmed Mr. Martinez's expectations that he would be paid when the Company paid his expected wages for some, but not all, of the pay periods during his term of employment and by reimbursing some, but not all, of the work related expenses he incurred, and by subsequently repeating promises to pay Mr. Martinez for back wages and unreimbursed expenses.  Additionally, upon information and belief and at all times relevant to the Complaint, Mr. Martinez justifiably relied to his detriment on Compressus' repeated promises to pay him his back wages and unreimbursed expenses, and the Company intended Mr. Martinez to rely on its promises, even though it knew it would not pay him his back wages and unreimbursed expenses as he had come to expect.

56.     As a result of Compressus' actions, Mr. Martinez suffered economic harm and is entitled to equitable relief in the form of wages for the services he provided to the Company in an amount not less than Two Hundred Ninety Thousand Dollars ($290,000.00) and the reimbursement of work related expenses he incurred in providing those services in an amount not less than Seventy Five Thousand Dollars ($75,000.00).

### COUNT III
### (Violation of the FLSA – All Defendants)

57.     Mr. Martinez re-alleges and incorporates by reference the foregoing allegations set forth in the Complaint.

58.     At all times relevant to this Complaint, Mr. Martinez was an individual engaged in interstate commerce and was employed by Defendants within the meaning of the FLSA, and is entitled to the rights, protections, and benefits provided under the FLSA.

59.     Additionally, Compressus was an enterprise engaged in interstate commerce within the meaning of the FLSA.  Specifically, at all times relevant to this Complaint, Compressus had employees, including without limitation Mr. Martinez, who engaged in interstate commerce, and had an annual gross volume of business equal to or in excess of Five Hundred Thousand and 00/100 Dollars ($500,000.00).  Because Mr. Campbell and Mr. Macfarlane possessed operational control of the Company's covered enterprise at all times relevant to this Complaint, they are jointly and severally liable for unpaid wages under the FLSA.

60.     Mr. Martinez was a non-exempt employee of Defendants at all times when he received no compensation on a regular basis, including most recently and without limitation the pay periods from mid-January 2013 to June 30, 2013.  *See* 29 C.F.R. §§ 600(a), 602(a); *see also*

*Cannon v. District of Columbia*, 717 F.3d 200, 204-05 (D.C. Cir. 2013); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847 (6th Cir. 2012).

61.     Defendants violated the FLSA, 29 U.S.C. § 206, by failing to pay Mr. Martinez at least the minimum wage for every hour worked.

62.     Defendants did not reasonably believe that their acts or omissions were not in violation of the FLSA.

63.     Further, upon information and belief and at all times relevant to the Complaint, Mr. Martinez justifiably relied to his detriment on repeated promises made by Defendants to pay him his back wages, and Defendants intended Mr. Martinez to rely on their promises, even though they knew they would not pay him his back wages as he had come to expect.

64.     By their actions alleged herein, Defendants willfully, knowingly, and/or recklessly failed to pay Mr. Martinez minimum wages in violation of the FLSA and corresponding federal regulations.

65.     As a result of the unlawful acts of Defendants, Mr. Martinez has been deprived of minimum wages in an amount to be determined at trial, and is entitled to recover such amount, an additional equal amount as liquidated damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT IV
### (Violation of the DCMWA – All Defendants)

66.     Mr. Martinez re-alleges and incorporates by reference the foregoing allegations set forth in the Complaint.

67.     The contract between Compressus and Mr. Martinez was entered into by a Delaware corporation with its principal place of business in Washington, D.C. and an individual residing in Nevada.  Besides the foregoing, no other fora has a reasonable relationship to the

contract between Compressus and Mr. Martinez, Mr. Martinez's employment by Defendants, or this dispute.

68.     Moreover, Washington, D.C. represents the place where substantially all of the contracting and negotiation among the parties occurred, the place of performance, the location of the contract's subject matter, and the place of business of Compressus. Thus, under applicable choice of law principles, D.C. law governs the contract between Compressus and Mr. Martinez, Mr. Martinez's employment by Defendants, and this dispute.

69.     At all times relevant to the Complaint, Mr. Martinez was employed by Defendants within the meaning of the DCMWA, and is entitled to the rights, protections, and benefits provided under the DCMWA. Specifically, as under the FLSA, Mr. Campbell and Mr. Macfarlane are jointly and severally liable with Compressus for violations of the DCMWA.

70.     Because the DCMWA adopts the same definitions for exempt employees as the FLSA, *see* D.C. Code § 32-1004(a), Mr. Martinez was a non-exempt employee of Defendants at all times when he received no compensation on a regular basis, including most recently and without limitation the pay periods from mid-January 2013 to June 30, 2013.

71.     Defendants violated the DCMWA, D.C. Code § 32-1003(a), by failing to pay Mr. Martinez at least the minimum wage for every hour worked.

72.     Defendants did not reasonably believe that their acts or omissions were not in violation of the DCMWA.

73.     Further, upon information and belief and at all times relevant to the Complaint, Mr. Martinez justifiably relied to his detriment on repeated promises made by Defendants to pay him his back wages, and Defendants intended Mr. Martinez to rely on their promises, even though they knew they would not pay him his back wages as he had come to expect.

74.     By their actions alleged herein, Defendants willfully, knowingly, and/or recklessly failed to pay Mr. Martinez minimum wages in violation of the DCMWA.

75.     As a result of the unlawful acts of Defendants, Mr. Martinez has been deprived of minimum wages in an amount to be determined at trial, and is entitled to recover such amount, an additional equal amount as liquidated damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT V
### (Violation of the DCWPCL – Compressus)

76.     Mr. Martinez re-alleges and incorporates by reference the foregoing allegations set forth in the Complaint.

77.     At all times relevant to the Complaint, Mr. Martinez was employed by Compressus within the meaning of the DCWPCL, and is entitled to the rights, protections, and benefits provided under the DCWPCL.

78.     Because exemptions under the DCWPCL are to be interpreted and applied in the same manner as exemptions under the FLSA, Mr. Martinez was a non-exempt employee of Compressus at all times when he received no compensation on a regular basis, including most recently and without limitation the pay periods from mid-January 2013 to June 30, 2013.

79.     Under the DCWPCL, D.C. Code § 32-1301(3), "wages" are broadly defined as "all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation," and include, *inter alia*, "[o]ther remuneration promised or owed [p]ursant to a contract for employment, whether written or oral . . . ."

80.     Compressus violated the DCWPCL, D.C. Code § 32-1302, by failing to pay Mr. Martinez wages earned, including but not limited to his regular salary and reimbursable work

related expenses, at least twice during each calendar month, on regular paydays designated in advance by the Company.

81.     Compressus violated the DCWPCL, D.C. Code § 32-1303, by failing to pay Mr. Martinez all wages earned, including but not limited to back wages representing both his regular salary and reimbursable work related expenses, the next working day following his discharge from the Company.

82.     Further, upon information and belief and at all times relevant to the Complaint, Mr. Martinez justifiably relied to his detriment on repeated promises made by Compressus to pay him his back wages representing both his regular salary and reimbursable work related expenses, and the Company intended Mr. Martinez to rely on its promises, even though it knew it would not pay him his back wages as he had come to expect.

83.     By their actions alleged herein, Defendants willfully, knowingly, and/or recklessly failed to pay Mr. Martinez an amount not less than Two Hundred Ninety Thousand Dollars ($290,000.00) representing back wages for regular salary, and willfully, knowingly, and/or recklessly failed to pay Mr. Martinez an amount not less than Seventy Five Thousand Dollars ($75,000.00) representing unreimbursed work related expenses, in violation of the DCWPCL.

84.     As a result of the unlawful acts of Compressus, Mr. Martinez has been deprived of the foregoing amounts, and is entitled to recover such amount, plus an amount equal to treble his unpaid wages as liquidated damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems just and proper.

**COUNT VI**
**(Breach of Fiduciary Duty, Equitable Estoppel, and Surcharge under ERISA –**
**Compressus)**

85.     Mr. Martinez re-alleges and incorporates by reference the foregoing allegations contained in the Complaint.

86.     Upon information and belief, each and every benefit program made available by Compressus and in which Mr. Martinez was eligible to participate – including but not limited to the Company's dental, medical, retirement, savings, long-term disability and life insurance plans – is an employee benefit plan governed by ERISA.

87.     Upon information and belief, Compressus was at all times relevant to the Complaint the plan sponsor and plan administrator of each and every benefit program made available by the Company and in which Mr. Martinez was eligible to participate, including but not limited to the Company's dental, medical, retirement, savings, long-term disability and life insurance plans.

88.     At all times relevant to the Complaint, Compressus was a fiduciary as such term is defined under ERISA, 29 U.S.C. § 1002(21).

89.     ERISA requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . . ."  ERISA, 29 U.S.C. § 1104(a)(1)(A). Additionally, ERISA requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."  ERISA, 29 U.S.C. § 1104(a)(1)(B).

90.     By inexplicably and without notice terminating Mr. Martinez and his family's coverage under the Company's benefit plans in June 2013, Compressus made material misrepresentations and/or omissions upon which Mr. Martinez detrimentally relied.  Specifically,

by concealing the cancellation of Mr. Martinez's benefits effective April 30, 2013, Compressus

prevented Mr. Martinez from obtaining alternative coverage for himself and his family, thereby

directly and proximately causing Mr. Martinez and his family to incur unpaid dental and medical

expenses for which private reimbursement was required and causing severe damage to their

credit rating.

91.     Given the egregious and extraordinary nature of Compressus' breach of fiduciary

duty, and the extent of harm such breach caused Mr. Martinez, legal remedies available under

ERISA are inadequate to make Mr. Martinez whole.

92.     As a result of Compressus' breach, Mr. Martinez is entitled to recover equitable

relief under ERISA, 29 U.S.C. § 1132(a)(3), against the Company to make him whole, including

without limitation equitable estoppel of the Company's cancellation of his benefits and

restitution in the form of a surcharge against the Company in an amount not less than Sixty One

Thousand Dollars ($61,000.00) representing medical expenses, dental expenses, and plan

premiums he had to pay due to the Company's breach, as well as prejudgment interest, attorneys'

fees, costs, and any other relief the Court deems just and proper.

## COUNT VII
### (Failure to Provide Required Notice under ERISA and COBRA – Compressus)

93.     Mr. Martinez re-alleges and incorporates by reference the forgoing allegations

contained in the Complaint.

94.     The termination of Mr. Martinez's employment at Compressus resulting in his

loss of coverage under the Company's benefit plans constitutes a qualifying event as that term is

defined under ERISA and COBRA.  *See* 29 U.S.C. § 1163.

95.     ERISA and COBRA require employers and plan administrators to send

employees covered under employee benefit plans written notice of their rights to continuation

coverage under the statutes within 45 days after the date of a qualifying event.  *See* 29 U.S.C. §

1166.

96.     Compressus never sent Mr. Martinez written notice of the qualifying event

resulting in the loss of his coverage under the Company's benefit plans.  Contrary to the

contentions made by Mr. Macfarlane after Mr. Martinez discovered the cancellation of his

benefits, Mr. Martinez never resigned his employment but instead continued to work for the

Company in the capacity as Chief of Government Relations until June 2013.

97.     Mr. Martinez only discovered that his benefits were cancelled effective April 30,

2013, and that his employment had been terminated, in mid-June 2013 when Mrs. Martinez

discovered that medical and dental bills that should have been covered were inexplicably denied.

98.     Because of Compressus' failure to provide Mr. Martinez with the required notice,

Mr. Martinez was prevented from securing alternative coverage for himself and his family after

the cancellation of his benefits, including by electing continuation coverage under ERISA and

COBRA.  Compressus' violation of the notice requirements of ERISA and COBRA therefore

prejudiced Mr. Martinez by directly and proximately causing him and his family to incur unpaid

dental and medical expenses for which private reimbursement was required and causing severe

damage to their credit rating.

99.     As a result of Compressus' violation of ERISA and COBRA's notice

requirements, Mr. Martinez is entitled to recover an amount not less than Thirty Eight Thousand

Five Hundred and 00/100 Dollars ($38,500.00), representing punitive damages of $110 per day

recoverable under ERISA and COBRA, 29 U.S.C. §§ 1132(a)(1)(A), 1132(c)(1)(A), as well as

prejudgment interest, attorneys' fees, costs, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Martinez prays this Court enter an order providing for the following relief against Defendants:

1.      Granting judgment in favor of Mr. Martinez against Compressus in an amount not less than Two Hundred Ninety Thousand Dollars ($290,000.00), representing promised wages, Seventy Five Thousand Dollars ($75,000.00) in unpaid reimbursable work related expenses recoverable under Mr. Martinez's claims for breach of contract (Count I), quantum meruit (Count II), violation of the FLSA (Count III), violation of the DCMWA (Count IV), and violation of the DCWPCL (Count V);

2.      Granting judgment in favor of Mr. Martinez against Compressus in an amount not less than Seven Hundred Thirty Thousand and 00/100 Dollars ($730,000.00), representing liquidated damages recoverable under Mr. Martinez's claims for violation of the FLSA (Count III), violation of the DCMWA (Count IV), and violation of the DCWPCL (Count V);

3.      Granting judgment in favor of Mr. Martinez against Mr. Campbell and Mr. Macfarlane for joint and several liability in an amount to be determined at trial, representing damages recoverable under Mr. Martinez's claims for violation of the FLSA (Count III) and violation of the DCMWA (Count IV);

4.      Awarding Mr. Martinez equitable relief in the form of requiring Compressus to recognize Mr. Martinez as a Co-Founder and Director Emeritus in any and all listings of the Board of Directors of the Company;

5.      Equitably estopping Compressus' cancellation of Mr. Martinez's benefits pursuant to his breach of fiduciary duty under ERISA claim (Count VI);

6.      Awarding Mr. Martinez restitution in the form of a surcharge against Compressus in an amount not less than Sixty One Thousand Dollars ($61,000.00), representing medical expenses, dental expenses, and plan premiums recoverable under Mr. Martinez's breach of fiduciary duty under ERISA claim (Count VI);

7.      Granting judgment in favor of Mr. Martinez against Compressus in an amount not less than Thirty Eight Thousand Five Hundred and 00/100 Dollars ($38,500.00), representing punitive damages recoverable under his ERISA claim (Count VII);

8.      Awarding Mr. Martinez the costs of this action;

9.      Awarding Mr. Martinez reasonable attorneys' fees; and

10.     Granting such further relief as this Court deems just and equitable.

## PRAYER FOR JURY TRIAL

WHEREFORE, Mr. Martinez prays for a trial by jury on all allegations contained herein so triable.

Respectfully submitted,


/s/ Lori Vaughn Ebersohl
Lori Vaughn Ebersohl
D.C. Bar # 428793
APATOFF PETERS EBERSOHL
252 N. Washington Street
Falls Church, VA 22046
Telephone: (703) 534-4440
Facsimile: (301) 279-2819
Email: lebersohl@apatoffpeters.com

*Attorneys for Plaintiff Reynaldo Martinez*